STUDDARD *v.* WALTER C. HUDSON, INC.

5-1039                                    295 S. W. 2d 637

Opinion delivered November 5, 1956.

[Rehearing denied December 10, 1956.]

*Talley & Owen* and *William L. Blair,* for appellant.

*Hendrix Rowell,* for appellee.

GEORGE ROSE SMITH, J. This is a suit brought by Walter C. Hudson, Inc., and its trustee, to foreclose a deed of trust upon certain land in Pulaski county. The deed of trust was executed by the appellant, Elizabeth Studdard, to secure a loan of $11,200 and to secure any future indebtedness to Hudson either incurred by Miss Studdard herself or indorsed by her. The appellant makes two defenses to the suit: (*a*) She has assertedly

not been given credit for a cash payment of about $4,800 made by her brother, O. O. Studdard, and (*b*) the transaction is void for usury. The chancellor rejected both defenses and entered a decree for the plaintiffs, awarding judgment for the unpaid balance of $5,358.35 and foreclosure of the lien.

The first defense presented a question of fact. Walter C. Hudson testified that his company made the original loan of $11,200 on February 23, 1952, and took the deed of trust as security. In June of that year Miss Studdard wrote to Hudson, asking that additional advances be made to her brother and to W. C. Potts, whose notes Miss Studdard promised to indorse. According to Hudson, he later made loans to Studdard and Potts, the notes were indorsed by Elizabeth Studdard, and these items are part of the debt sued upon.

Miss Studdard and her codefendants, O. O. Studdard and Potts, insist that her indorsement was obtained by fraud after the Studdard-Potts notes had been paid in full. They say that in September, 1953, Hudson held notes for $4,800 signed only by O. O. Studdard and Potts. According to their testimony, O. O. Studdard then paid the notes with cash, but Hudson persuaded Miss Studdard to fabricate her letter of June 19, 1952, and to indorse the paid notes, in order that Hudson might prosecute a claim for fire insurance upon some of Miss Studdard's property that had burned. Hudson denies the truth of this testimony.

One version or the other is manifestly false. We cannot say that the chancellor was wrong in electing to credit the plaintiffs' testimony. Hudson's narrative, on the one hand, puts no strain upon one's credulity. It describes an ordinary business transaction and is corroborated by all the written evidence. Miss Studdard admittedly wrote the letter that is ostensibly dated June 19, 1952; she admittedly indorsed the Studdard-Potts notes. Hudson's account with Miss Studdard involves many items of receipt and disbursement; its accuracy is questioned only with respect to the cash payment allegedly made by O. O. Studdard.

The appellants' testimony, on the other hand, is not equally easy to believe. The defendants say that O. O. Studdard paid more than $4,800 to Hudson without taking a receipt or requiring the surrender of the notes that were being paid. Studdard says that the money came from a settlement made with him by an insurance company in connection with a lawsuit in Texas. Studdard offered to furnish proof establishing the fact that such a settlement had been made, but the proof was never supplied. This omission is especially significant; for the chancellor expressed his interest in the matter, and it would obviously be easy to prove beyond doubt the making of a substantial settlement with an insurance company. That the settlement did not take place is indicated by the testimony of Hudson's secretary, who produced an office memorandum of a telephone call received from Studdard about a year after the date of the asserted cash payment of $4,800. This memorandum tends to show that Studdard was still expecting to obtain a settlement in the Texas litigation.

The claim of usury may be answered in a few words. The notes are not usurious on their face, as they bear interest at six percent per annum, until maturity and thereafter at ten percent per annum, and that is all the complaint demands. The appellants contend, however, that in making the original loan of $11,200 Hudson agreed to advance an additional $5,800 later on to pay a prior mortgage, that this additional advance was not made, and that the prior mortgage was eventually satisfied from the proceeds of a fire insurance policy held by Miss Studdard. In listing the charges and credits to the account with Hudson the appellants' counsel give Miss Studdard credit for the payment of the prior mortgage but do not charge the amount of that mortgage as part of her debt to Hudson. This method of accounting is evidently incorrect; for if the payment of the prior mortgage is to be entered on one side of the ledger as to the credit to the account the amount of the mortgage must of course be recognized on the other side as a part

of the indebtedness. When this error is eliminated the plaintiffs' claim falls short of usury by several thousand dollars.

Affirmed.